(January 5, 1907.)

## BINGHAM COUNTY, Respondent, v. FIDELITY AND DE-POSIT COMPANY, Appellant.

[88 Pac. 829.]

OFFICIAL BOND—LIABILITY OF SURETY—LICENSE TAX—APPLICATION FOR LICENSE—PAYMENT OF TAX TO SHERIFF—WHERE RIGHT OF COUNTY ATTACHES THERETO—COMMENCEMENT OF BUSINESS—ANNEXATION OF PART OF ONE COUNTY TO ANOTHER—SETTLEMENT WITH SHERIFF—RIGHT OF SURETY TO SETOFF—COUNTY WARRANTS—INSTRUCTION TO FIND FOR PLAINTIFF.

1. Under the provisions of our law all applications for licenses to sell intoxicating, spirituous, malt or fermented liquors or wines to be drank in or or about premises where sold, must be made to the board of county commissioners of the county wherein it is proposed to sell such liquors.

2. The applicant for such license must produce before said board the receipt of the sheriff, showing that he has paid into his hands the amount due for such license, and execute and deliver to said board his bond to the state of Idaho in the penal sum of $1,000, with at least two good and sufficient sureties possessing certain qualifications.

3. Under the provisions of section 1637 of the Revised Statutes, if any person required to take out a license fails, neglects, or refuses to do so, or carries on or attempts to carry on business without such license, the collector may direct suit in the name of the state of Idaho, as plaintiff, to be brought for the recovery of the license tax; and under the provisions of section 1639 of the Revised Statutes upon the trial of such action the defendant is deemed not to have procured the proper license unless he produces it, or proves that he did procure it, but he may plead in bar of the action a recovery against him and the payment by him in a civil action of such license tax.

4. Under the law a license must be procured before the commencement of any business or occupation liable to pay a license tax, and if a person commences such business without a license, he is not only liable to the county for a license tax, but may also be prosecuted criminally for doing business without a license.

5. Where a person pays the required license tax for a license to the sheriff to engage in the liquor business, and fails to make application to the board of county commissioners therefor, and fails to file the bond required by law, the money so paid belongs to the

county from the very moment that the applicant begins business, and the surety on the sheriff's official bond is liable therefor.

6. Where a person pays a license tax to the sheriff and begins business and thereafter the portion of the county in which such business is carried on is annexed to another county, the license tax so paid to the sheriff must be paid to the treasurer of his county, and his surety is liable to such county therefor.

7. Where a county makes a settlement with the sheriff, as required by law, and on such settlement directs certain warrants to be drawn in his favor, and such warrants are drawn and delivered to him, in a suit between the county and said sheriff and his surety, the surety is not entitled to have the amount represented by said warrants credited on the judgment obtained against the sheriff, unless such warrants are produced and surrendered on the trial, or it appears that the sheriff is the owner of such warrants.

8. Under the facts in this case, it was not error for the court to instruct the jury to bring in a verdict for the plaintiff.

(Syllabus by the court.)

APPEAL from the District Court of Sixth Judicial District for Bingham County. Hon. Alfred Budge, Judge.

Action by a county to recover from the principal and surety on an official bond. Judgment for plaintiff. *Affirmed.*

Dietrich & Clark, for Appellant.

The surety's obligations are strictly legal. There may be equitable considerations strongly supporting the claim of the beneficiary as against the principal, but never as against the surety, and in this case the appellant has the right to stand upon its bond, strictly construed, and must be held only on account of such breach of the bond, if any, as is declared upon in the complaint.

Moneys paid to the sheriff of a county, under the law requiring that the sheriff's receipt be presented by the applicant for license at the time he presents his bond and application, continue to belong to the persons depositing the same until such person shall have been granted licenses by the board of county commissioners. The right of the county to said moneys does not become absolute until the licenses are granted, and, in the meantime, the sheriff holds such moneys in trust

for both the payors and the county, it being the duty of the sheriff to account for and pay over said moneys into the county treasury when licenses have been granted and issued, and not before, and if licenses are not granted and issued, it is his duty to return such moneys to the parties paying the same. The entire scheme for issuing licenses and keeping the public accounts relative thereto is inconsistent with any other view.

The sheriff's account with the auditor is charged with the blank licenses delivered to him by the auditor. That account is credited with the licenses returned, and the sheriff must make up the deficit, if any, by cash payment. He is not chargeable with license moneys until licenses are issued. (See Pol. Code, Ann., secs. 1479-1483, 1489.)

This appellant is not responsible for the items making up the total of $1,404 paid by the persons who never at any time, even after the term of office of defendant Steers, made application for licenses. It is equally clear that the board of commissioners could not, by proceedings taken in February and April, 1905, months after the expiration of Steers' term of office, impose upon this appellant a liability which did not arise during the term of office of its principal. The provision of the bond is that Peter A. Steers "shall well, truly and faithfully perform all the duties" of his office "during his continuance in such office." (See *Ada County v. Ellis,* 5 Idaho, 333, 48 Pac. 1071.) This case, considered together with the case of *Ada County v. Gess,* 4 Idaho, 611, 43 Pac. 71, makes clear the marked distinction between liabilities of a principal and the liabilities of a surety.

The question is not whether the sheriff rightfully received these moneys, but solely when, if ever, these moneys first belonged to the county, and when, if ever, the obligation first attached to the sheriff to pay the same to the county treasurer.

"There is no doubt of the general proposition that the obligation of a surety is *strictissimi juris,* and cannot be extended by construction. He is liable only where there is a breach of the letter of his contract." (*People v. Hilton,* 36 Fed. 172; *Wilson v. State,* 67 Kan. 44, 72 Pac. 517; *San Jose v. Welch,* 65 Cal. 358, 4 Pac. 207; *People v. Pennock,* 60 N. Y.

421; *San Louis Obispo v. Farnum,* 108 Cal. 562, 41 Pac. 445; *Schloss v. White,* 16 Cal. 66; *United States v. Boyd,* 118 Fed. 89; *Overacre v. Garrett,* 5 Lan. (N. Y.) 156.) .

Appellant claims that it is equitably entitled to have the claim of the county against Steers compensated by the amount of the claim of Steers against the plaintiff county. (Rev. Stats., sec. 4186.)

It is conceded that the defendant Steers is entitled to receive from the plaintiff, for compensation and for reimbursement of moneys expended, in relation to his said trust, the said sum of $1,018.62. (1 Brandt on Suretyship, .3d ed., sec. 259; *Iowa & C. Land Co. v. Temescal Water Co.,* 95 Fed. 320; *Hart v. Cooper,* 47 Cal. 77; *Mombert v. Bannock Co.,* 9 Idaho, 470, 75 Pac. 239.)

J. J. Guheen, Attorney General, Robt. McCracken, County Attorney, and Standrod & Terrell, for Respondent.

This court held in the case of *State of Idaho v. McDonald,* 4 Idaho, 468, 95 Am. St. Rep. 137, 40 Pac. 312, that under section 2157, Revised Statutes, it is the duty of the sheriff to collect and pay over state and county licenses. This section of the Revised Statutes has never been repealed.

There is no provision of law requiring the sheriff to return money once paid to him for a license, or that would even justify him in so doing.

Appellant invoked the rule that the obligation of a surety is *strictissimi juris,* and cannot be extended by construction—that the bondsmen are liable only when there is a breach of the letter of his contract. That doctrine was not intended to obtain in this state with reference to official bonds. (*People v. Slocum,* 1 Idaho, 62; Pol. Code 1901, secs. 299, 1635.) .

The object of the bond should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company, if there be another construction equally admissible under the terms of the instrument. (*Am. Surety Co. v. Pauley,* 170 U. S. 133, 42 L. ed. 977, 18 Sup. Ct. Rep. 552-557.)

The defendant sheriff having collected the money in question, under the statute, and by virtue of his office, for Bingham county, he is estopped to deny the right of the county to receive or to question the failure of the applicants to comply with section 1505 of the Political Code in making their application and filing their bonds.

If the defendant sheriff is estopped under these facts, his surety is also estopped. (*Placer County v. Astin,* 8 Cal. 303; *People v. Jenkins,* 17 Cal. 500; *McKee v. Monterey County,* 51 Cal. 275; *People v. Van Ness,* 79 Cal. 84, 12 Am. St. Rep. 134, 21 Pac. 554; *Perry v. Otay Irr. Dist.,* 127 Cal. 565, 60 Pac. 40.)

Appellant contends that as there were some outstanding warrants drawn by Bingham county to Steers, amounting to $1,018.62, on account of salary the appellant, the surety company, should be allowed this amount as a setoff against the demands of Bingham county, in this action. Neither Steers nor the appellant brings these warrants into court, and offers to surrender them. (*Perry v. Otay Irr. Dist., supra.*)

Where a statute provides that a public officer shall receive as compensation a certain sum, payable out of funds collected, and another act requires him to pay all money collected into the treasury, he is not to retain his salary out of money collected by him, but is entitled to a warrant from the auditor on the treasurer therefor. (23 Am. & Eng. Ency. of Law, new ed., 399.)

SULLIVAN, J.—This action was brought to recover from the defendant Steers and his surety, the Fidelity and Deposit Company, the sum of $4,610, which, it is alleged in the complaint, represents a number of items of license money collected for liquor licenses by the defendant as sheriff of Bingham county, which he neglected and refused to pay into the county treasury. The defendant Steers admits in his answer that there was paid to him by divers persons, who were desirous of engaging in the retail and wholesale liquor business within Bingham county, the sum of $4,610, the sum for which this action is brought.

The appellant, the Fidelity and Deposit Company, deny specifically the allegations of the complaint, and set up as an affirmative defense that no licenses were ever issued to the parties named in the bill of particulars filed in said action, and that no applications were ever made for licenses, nor were bonds filed by the applicants as required by law for licenses, and in addition to said defenses appellant also averred that if anything was due from the defendant Steers to the plaintiff on account of the alleged licenses, the defendant surety company should have the benefit of a setoff to the amount of $1,018.62, which amount it is alleged at the time the complaint was filed was due the defendant Steers on account of salary and on account of moneys paid out by him for the plaintiff county, the claim of the said Steers for said amount having been audited and warrants drawn accordingly, which warrants were unpaid at the time the suit was brought. The cause was tried before a jury, and after both parties rested the appellant requested certain instructions in writing, all of which were denied by the court, and on the request of the plaintiff the court gave to the jury a peremptory instruction to find for the plaintiff against defendants, and each of them, for the full amount prayed for in the complaint, and the jury brought in a verdict against said defendants for the sum of $4,610. Judgment was entered accordingly. The defendant Steers does not appeal. The defendant, the Fidelity and Deposit Company, appeals from both the judgment and the order denying a motion for a new trial.

The appellant assigns numerous errors, all of which go to the admission of certain evidence, the refusal to strike out certain testimony, and the giving and refusal to give certain instructions. It appears from the evidence that the sheriff had received from divers persons money for liquor licenses to the amount of $4,610. It is shown by stipulation of counsel that four persons paying $1,404 of such money were not granted any licenses, and that no one of said four persons ever produced before the board of county commissioners any sheriff's receipt showing payment to the defendant Steers, or that any one of said four persons produced any bond or made an ap-

plication for license. It is also stipulated that five other persons who had paid license money to the sheriff did not make application for a license until some time after the expiration of the term of office of the sheriff, and that licenses were granted to those five persons some time after the expiration of the term of office of the defendant Steers; that in one case the party furnished a bond, which was not accepted by the board, and did not thereafter furnish an acceptable bond.

It is first contended by counsel for appellant that it was error for the court to peremptorily instruct the jury to find for the plaintiff in the sum of $4,610, that being the sum the sheriff had received from divers persons for liquor licenses. That point involves the question whether the appellant, as surety on the sheriff's bond, is liable to the county for money paid to him during the term of his office by persons to procure liquor licenses, but who, as a matter of fact, did not make formal application therefor, or furnish the proper bond required by law.

In order to determine that contention we must take into consideration sections 1537 and 1639 of the Revised Statutes, which sections are as follows: "Sec. 1637. Against any person required to take out a license who fails, neglects or refuses to take out such license, or who carries on, or attempts to carry on, business without such license, the collector may direct suit in the name of the state of Idaho as plaintiff, to be brought for the recovery of a license tax, and in such case either the collector or district attorney may make the necessary affidavit for, and a writ of attachment may issue without any bonds being given on behalf of the plaintiff; and in case of a recovery by the plaintiff, twenty dollars damages must be included in the judgment and costs to be collected from the defendant, and when collected, five dollars thereof must be paid to the collector and fifteen dollars to the district attorney prosecuting the suit. . . . . Sec. 1639. Upon the trial of any action authorized by this chapter, the defendant is deemed not to have procured the proper license unless he either produces it or proves that he did procure it; but he may plead in bar of the action a recovery against him and the payment by

him in a civil action of the proper license tax, together with the damages and costs.''

Under the law a license must be procured before the commencement of any business or occupation liable to pay a license tax, and as provided by section 1637, if any person commences a business or occupation liable to pay a license tax, and fails, neglects or refuses to procure such license, the collector may direct suit to be brought in the name of the state for the recovery of such license tax. Section 1639 provides that upon the trial in such action the defendant is deemed not to have procured a proper license unless he either produces it or proves that he has procured it, and may also plead in bar of an action a recovery against him, and the payment by him in a civil action of the proper license tax together with damages and costs.

It will be observed from the provisions of said section 1637 that any person required to take out a license to engage in a certain business, who fails, neglects or refuses to take out such license and commences to carry on such business without such license, is liable for such license tax. That being true, the very moment that a person begins such business he is liable under the law for a license tax, and the county is entitled to receive the same. Therefore, where a person pays such tax to the sheriff and takes his receipt therefor, and thereafter begins the business without making application to the board of county commissioners for a license and presenting to them the proper bond, the money so paid to the sheriff belongs to the county, as under the law a person beginning a business for which a license is required is liable for the license tax from the very moment he begins business, and as each and every of the persons who paid the sum of $4,610 to the sheriff thereafter engaged in the liquor business, the moneys so paid to the sheriff belonged to the county from the very moment the persons paying it commenced the liquor business. That being true, the obligation first attached to the sheriff to pay the money over to the county at the time the party paying it commenced such business.

In regard to the Eckstine item of $301, Eckstine conducted a saloon business in Victor in said Bingham county. By an act of the legislature of 1903 the territory including the town of Victor was cut off from Bingham county and annexed to Fremont county, subject to a vote of the residents of that territory, and at a general election held November 8, 1904, the question was voted upon pursuant to said act, and the vote resulted in seventy in favor of, and seven against, the annexation to Fremont county. The result of the election was canvassed by the board of county commissioners on November 21, 1904, and upon that date the record of said election was certified by the board. Under the provisions of said act the annexation occurred on the date the result was so certified.

·Eckstine lived at Rexburg, Idaho, and at that place, on November 7, 1904, wrote a check in favor of the defendant Steers and sent it by mail to him at Blackfoot, Idaho. There is no evidence in the record as to the date when the sheriff received said check, but by a stamp upon the check it is noted that it was paid November 18, 1904. The evidence shows that Eckstine engaged in the liquor business at Victor immediately upon sending the check to Steers. That being true, Bingham county became entitled to the license tax from him on the date he began business. The fact that the portion of Bingham county including the said town of Victor was thereafter attached to Fremont county makes no difference, for if that county was entitled to any portion of the tax paid by Eckstine it could make its proper claim against Bingham county therefor. The part so annexed was a part of Bingham county at the time said license tax was paid and at the time Eckstine entered upon said business, and Bingham county was entitled to receive such license tax.

Counsel for appellant contends that as there were some outstanding warrants drawn by Bingham county in favor of said sheriff amounting to $1,018.62 on account of salary and money paid out by him, the appellant should be allowed this amount as a setoff against the demands of Bingham county in this action. The facts are that the defendant Steers presented to the board of county commissioners of said county his verified

claims covering the items making up said amount, which claims were audited in the manner provided by law by the board of county commissioners of said county, and the auditor was directed to draw warrants in favor of said sheriff, and those warrants were accordingly drawn in his favor and delivered to him. The evidence also shows that no part of said warrants or the indebtedness evidenced thereby had been paid by the county. Counsel contends that appellant is equitably entitled to have the claim of the county against the sheriff compensated by the amount of his claim against the plaintiff county. The appellant does not bring said warrants into court nor offer to surrender them, nor does the record show who the owner of said warrants was at the time this action was brought or at the time of the trial. They no doubt passed into the hands of third parties. However, it is well established that such warrants are not negotiable, but it would be very inequitable in this court to require a purchaser for a valuable consideration of the warrants to suffer because of said sheriff's dishonesty. If it had been shown that the sheriff was still the owner of said warrants, it would have been but just and right for the county to refuse payment to him of said warrants, and to have offset the amount thereof against the judgment in this action.

Under the evidence we do not think it was error for the court to instruct the jury to bring in a verdict for the plaintiff as was done in this case. After a careful examination of the record we are satisfied that no error was committed by the trial court, and that the judgment must be sustained, and it is so ordered. Costs of this appeal are awarded to the respondent.

Stockslager, C. J., and Ailshie, J., concur.

### ON PETITION FOR REHEARING.

(February 18, 1907.)

AILSHIE, C. J.—The appellant, Fidelity and Deposit Company, has filed a petition for rehearing, in which it is alleged that this case was determined upon a question not argued or

presented by counsel on either side at the hearing either in the lower court or on appeal. In the petition counsel say: "The theory adopted by the court was not only not argued by counsel for either party, but was not hinted at in the pleadings." Counsel is mistaken, as we view the case, and by a reference to their brief upon the original hearing of the case, it will be seen that they submitted to this court the very question as to when the moneys paid to the sheriff for liquor licenses became the money of the county. The question, as stated by counsel in their original brief and from which we quote, is as follows: "The question is not whether the sheriff rightfully received these moneys, but solely when, if ever, these moneys first belonged to the county, and when, if ever, the obligation first attached to the sheriff to pay same to the county treasurer."

Proceeding upon the theory that the question as stated was really the decisive question submitted to us upon the original hearing of this case, we determined and decided that point and answered the query as indicated in the original opinion. We held there that moneys paid to the sheriff for liquor license immediately became the property of the county, either upon the applicant's starting up in the saloon business, or in case he does not previously commence business, then upon receiving a license under direction of the board of county commissioners. It is argued by counsel that this holding will create great confusion, and will amount to authorizing an applicant to proceed in the saloon business without giving a bond or receiving a license. We do not understand how any confusion can arise out of such a holding. If he pays the money to the sheriff for a liquor license and thereafter opens up business, even if he should never receive a license, he will be estopped and precluded from claiming or recovering the money after once engaging in the business. On the other hand, he will have no authority in law or fact to engage in the business until he furnishes a bond which is approved by the board of commissioners and a license is ordered issued to him. If he does engage in the business prior to such time, he incurs the risk

of being arrested for violation of the penal laws and prosecuted and punished accordingly.

In reference to the license money paid to the sheriff by one Eckstine, counsel insists that there is no evidence in the records to show that Eckstine actually engaged in the saloon business prior to the annexation of Victor to Fremont county. It is true that the evidence is very meager as to when he actually commenced business, but it is sufficient to establish a *prima facie* showing that he began prior to the date of annexation. In his letter to the sheriff under date of November 7th, he stated: "We will open business to-day." While this is not positive evidence that he actually opened business, it is sufficient *prima facie* showing to that effect and sufficient in the absence of any contrary showing. In modern times we have grown charitable, and give all men the *prima facie* presumption of telling the truth, however violent or unfounded that presumption may prove to be in some particular instances. The petition presents no sufficient reason for granting a rehearing in this case, and it is accordingly denied.

Sullivan, J., concurs.